# REMAND/JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 18-5534-GW(ASx) | Date | September 24, 2018 |
|---|---|---|---|
| Title | *Miguel Angel Ruiz v. Caraustar Custom Packaging Group, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Katie Thibodeaux | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Gloria Tumanyan | Rachel J. Lee |

**PROCEEDINGS:** PLAINTIFF MIGUEL ANGEL RUIZ'S MOTION FOR AN ORDER TO REMAND TO STATE COURT; REQUEST FOR SANCTIONS AGAINST DEFENSE COUNSEL IN AMOUNT OF $2,100.00 [23];

DEFENDANTS CARAUSTAR CUSTOM PACKAGING GROUP, INC.; CARAUSTAR INDUSTRIAL AND CONSUMER PRODUCTS; LOS ANGELES PAPER BOX; CARAUSTER INDUSTRIES, INC.; CARAUSTER CORP.; CARLOS MEDINA; AND CARAUSTAR INDUSTRIAL AND CONSUMER PRODUCTS GROUP, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND/OR PROVIDE A MORE DEFINITE STATEMENT [17]

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court would GRANT the Motion to Remand and REMAND the case to state court. The Court would DECLINE TO CONSIDER the Motion to Dismiss because it lacks jurisdiction to do so. Request for sanctions is DENIED.

|  | : | 08 |
|---|---|---|
| Initials of Preparer | JG | |

*Ruiz v. Caraustar Custom Packaging Grp., Inc.* (2:18-cv-05534-GW-(ASx))
Tentative Ruling on Plaintiff's Motion for an Order to Remand to State Court and Request for Sanctions and Defendants' Motion to Dismiss

I. **Background**

    A. Factual Background

Miguel Angel Ruiz ("Plaintiff" or "Ruiz") brought this suit in California Superior Court against Caraustar Custom Packaging Group, Inc.; Caraustar Industrial and Consumer Products; Los Angeles Paper Box; Carauster Industries, Inc.; Carauster Corp.; Crockett Graphics, Inc.; Caraustar Industrial and Consumer Products Group, Inc.; Laberk Harper ("Harper");[1] Carlos Medina ("Medina"); and Does 1 through 100 (collectively, "Defendants").[2] *See generally* Complaint, Docket No. 1-1. In the suit, Plaintiff alleges seven causes of action: (1) violation of the Fair Employment and Housing Act ("FEHA"); (2) breach of express oral contract not to terminate employment without good cause; (3) breach of implied-in-fact contract not to terminate employment without good cause; (4) negligent hiring, supervision, and retention; (5) wrongful termination of employment in violation of public policy as per California Labor Code § 1102.5 and FEHA; (6) other violations of California Labor Code § 1102.5; and (7) intentional infliction of emotional distress. *See id.* A number of defendants removed the case to this Court on June 21, 2018 pursuant to diversity jurisdiction ("Removing Defendants"). *See* Notice of Removal ("NOR"), Docket No. 1. The relevant factual allegations in this matter are included below in Section II.

    B. Procedural Background

Before the Court are two motions. As to the first motion, Plaintiff has filed a motion to remand the case back to state court. *See* Plaintiff's Notice of Motion and Motion for an Order to Remand to State Court and Request for Sanctions ("MTR"), Docket No. 23. Defendants Caraustar Custom Packaging Group, Inc., Caraustar Industrial and Consumer Products, Los Angeles Paper Box, Medina, and Caraustar Industrial and Consumer Products Group, Inc. ("MTR Defendants") filed an opposition to the MTR. *See* MTR Defendants' Opposition to

---

[1] The Complaint presumably meant to sue Laverk Harper rather than Laberk Harper. *See* NOR ¶ 30.

[2] Plaintiff recently filed notices of dismissal regarding Crockett Graphics, Inc., Caraustar Corp., and Caraustar Industries, Inc. *See* Notice of Dismissals, Docket Nos. 19, 20.

1

Plaintiff's Motion for an Order to Remand ("MTR Opp'n), Docket No. 26. Plaintiff filed a reply. Plaintiff's Reply in Support of Motion for Order to Remand ("MTR Reply"), Docket No. 28. As to the second motion, Defendants Caraustar Custom Packaging Group, Inc.; Caraustar Industrial and Consumer Products; Los Angeles Paper Box; Carauster Industries, Inc.; Carauster Corp.; Medina; and Caraustar Industrial and Consumer Products Group, Inc. moved to dismiss this action ("MTD Defendants"). *See* Memorandum of Points and Authorities in Support of MTD Defendants' Motion to Dismiss and/or Provide a More Definite Statement ("MTD"), Docket No. 17-1.

## II. <u>Motion to Remand</u>

The Court has an obligation to ensure that subject matter jurisdiction exists before proceeding, and it will therefore address the MTR first. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004).

### A. Legal Standard

"The party asserting federal jurisdiction has the burden of showing the case meets the statutory requirements for the exercise of federal jurisdiction and therefore belongs in federal court." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010). In order for a court to have diversity jurisdiction under 28 U.S.C. § 1332, the parties must be completely diverse. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005) ("[T]he presence . . . of a single plaintiff from the same [s]tate as a single defendant deprives the district court of original diversity jurisdiction."). Because MTR Defendants assert the Court's diversity jurisdiction, the Court must decide whether jurisdiction is proper, in particular, that the parties are completely diverse. *See Lewis*, 627 F.3d at 399.

For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983) (citations omitted). "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (citing *Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957)). A person's domicile is the place he or she physically resides with the intent to make it a fixed and permanent home, while residence means living in a particular locality. *See id.* (citing *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986)). A corporation, on the other hand, is a "citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of

business." 28 U.S.C. § 1332(c)(1). The phrase "principal place of business" means the place where a corporation's board and high level officers direct, control and coordinate its activities, also referred to as its "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81, 92-93 (2010). "In practice it should normally be the place where the corporation maintains its headquarters − provided that the headquarters is the actual center of direct, control, and coordination." *Id.* at 93.

The Court recognizes an exception to complete diversity for fraudulently joined or sham defendants. For diversity purposes, non-diverse defendants fraudulently joined in a suit may be disregarded. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009). Courts do not consider subjective intent in this inquiry. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). A non-diverse defendant is deemed fraudulently joined when the plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Id.*; *accord Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). "A merely defective statement of the plaintiff's action does not warrant removal . . . ." *Albi v. St. & Smith Publ'ns*, 140 F.2d 310, 312 (9th Cir. 1944). "It is only where the plaintiff has not, in fact, a cause of action against the resident defendant, and has no reasonable ground for supposing he has, and yet joins him in order to evade the jurisdiction of the federal court, that the joinder can be said to be fraudulent." *Id.*

Indeed, courts may consider "the facts showing the joinder to be fraudulent." *McCabe*, 811 F.2d at 1339; *see also Ritchey*, 139 F.3d at 1318 (explaining that where fraudulent joinder is at issue, a district court may look beyond the pleadings because "a defendant must have the opportunity to show that the individuals joined in the action cannot be liable on any theory"). As such, courts can consider declarations and affidavits to determine whether "discrete and undisputed facts" would preclude recovery against the non-diverse defendants. *Hunter*, 582 F.3d at 1044. Because the party seeking removal bears the burden of demonstrating fraudulent joinder, the Ninth Circuit has concluded that "the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Id.* (quoting *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573-74 (5th Cir. 2004) (en banc)).

To establish whether removal in a case is proper, courts should "strictly construe the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* Thus, removing parties bear a heavy burden to rebut the presumption against

3

removal. *See id.*

**B. Plaintiff's Citizenship**

Plaintiff is a citizen of California, as per the NOR. *See* NOR ¶ 12. In conjunction with the Complaint alleging Plaintiff's residence as California, the Court presumes that this is the case and sees no reason why Plaintiff would not have an intent to reside there. *See* Complaint ¶ 1. The parties seem to agree that Plaintiff's citizenship is California for purposes of diversity, and the Court will adopt that same position.

**C. Harper and Medina's Citizenship**

There are three defendants named in the Complaint whose citizenships are also California: Laverk Harper,[3] Carlos Medina, and Crockett Graphics, Inc.[4] *See* NOR ¶ 19 ("All three defendants, while identified as maintaining residency in the State of California . . . ."). In the NOR, Defendants concede that these three Defendants' citizenship for diversity purposes is California, but they argue that they are either "sham" defendants or "fraudulently joined." *See id.* ¶¶ 19-20. The MTR Defendants take the same position in the MTR Opposition. *See* MTR Opp'n at 6-10.

Plaintiff asserts causes of action against Medina (harassment on the basis of disability and IIED) and alleges that Medina is the human resources administrator who dealt directly with Plaintiff regarding his absence from work and his eventual termination. *See* Complaint ¶¶ 11-12. As to Harper, the Complaint alleges that he served as Plaintiff's supervisor in the relevant period. The Complaint alleges multiple causes of action against Harper (harassment on the basis of disability and IIED) and includes numerous factual allegations against him. *See id.* ¶¶ 11(a)-(i).

To demonstrate that Harper and Medina are not fraudulently joined or sham defendants,

---

[3] As Plaintiff admits, in the Complaint he misspelled the name of Laverk Harper as *Laberk* Harper. *See* MTR at 1. It is clear that the Complaint intended to name Laverk Harper, so the Court will still consider *Laverk* Harper's citizenship in this analysis because such a change could easily (and seems likely) to be made via amendment. The Court is confused, however, why Plaintiff did not amend its complaint to do so in light of MTR Defendants' representation that they apprised Plaintiff of this erroneous naming. *See* Opp'n at 3.

[4] Because Plaintiff voluntarily dismissed Crockett Graphics, Inc., the Court need not consider that entity's citizenship. *See* Notice of Dismissal, Docket No. 20. The voluntary-involuntary rule provides that "*[o]nly changes made voluntarily by the plaintiff* make the case removable. An action not removable as originally filed must remain in state court unless plaintiff does something *voluntarily* to change the nature of the case and render it removable." O'Connell & Stevenson, RUTTER GROUP PRAC. GUIDE: FEDERAL CIV. PRO. BEFORE TRIAL, Calif. & 9th Cir. Editions (The Rutter Group 2018) § 2:3354. More specifically, "[i]f diversity of citizenship is lacking at the time the state action was filed, but within one year P[laintiff] *voluntarily dismisses* or amends the complaint to *abandon* the action against the nondiverse defendant, the remaining diverse defendants are entitled to remove." *Id.* § 2:3361 (emphasis added).

the Court will summarize relevant allegations in the Complaint as to just those defendants. Plaintiff alleges that on or around May 11, 2017, Plaintiff felt a sharp pain in his knee while feeding a gluer machine at work, and a different employee informed Plaintiff's supervisor, Harper, about the injury. *See id.* ¶ 11(a). Plaintiff alleges that he then described the injury to Harper, told Harper that he could not walk on it, and expressed a wish to go to the company doctor. *See id.* According to the Complaint, Harper responded that "[w]e are going to get into a lot of trouble if you go." *See id.* Harper allegedly then "threateningly" said to Plaintiff, "[d]o you still want to go to the doctor?" *See id.* The Complaint alleges that Harper eventually let Plaintiff go home but told Plaintiff that he could not "tell anyone that you got injured at work." *See id.* Harper allegedly told Plaintiff to tell his doctor the injury happened at home, and Harper also said, "[i]f you don't lie to your doctor then you are not going to have a job to return to." *See id.* According to the Complaint, after seeing a doctor and being diagnosed with a knee sprain, Plaintiff gave his doctor's note with that diagnosis and work restrictions to a co-worker who gave that note to Harper. *See id.* ¶¶ 11(b)-(c). That same day, Plaintiff allegedly told Harper in a text message that he could not go to work due to his injury, to which Harper responded that he needed Plaintiff to come in anyway. *See id.* ¶ 11(d). Plaintiff responded that he could not walk and Harper then left Plaintiff an angry voice message demanding Plaintiff come to the office. *See id.* At one point Plaintiff went to work, according to the Complaint, but told Harper he could not do the work. *See id.* ¶ 11 (f). Plaintiff's name allegedly did not appear on the assignment list and Harper said he could not accommodate him and that Plaintiff should return in two weeks or when he feels better. *See id.* The Complaint alleges a number of other interactions between Plaintiff and Harper. *See id.* ¶ 11(g)-(h).

The aforementioned allegations occurred between May 11, 2017 and May 25, 2017. On May 26, 2017, Medina, the human resources administrator, sent a letter to Plaintiff asking for documentation explaining Plaintiff's absence, claiming to have heard nothing from Plaintiff regarding his absence. *See id.* ¶ 11(i). On June 2, 2017, Medina allegedly sent a letter to Plaintiff terminating his employment effective May 26, 2017 for failing to call and/or show up to work for three consecutive days. *See id.* ¶ 12. The Complaint alleges that Harper and Medina's "discriminatory, harassing, and retaliatory actions against [P]laintiff constituted severe and outrageous misconduct and caused [P]laintiff extreme emotion distress. *See id.* ¶ 59. Plaintiff also alleges that Harper and Medina were aware they were treating Plaintiff in this manner, that

Harper and Medina's extreme and outrageous conduct proximately caused Plaintiff's "severe emotional distress," and that this conduct was intentional. *See id.* ¶¶ 61-63.

For Plaintiff to state a claim for IIED against Medina and/or Harper, the Complaint must sufficiently allege that they each: (1) engaged in extreme and outrageous conduct with the intent to cause, or reckless disregard for the probability of causing, severe emotional distress; (2) Plaintiff suffered extreme or severe emotional distress; and (3) Medina's and/or Harpers outrageous conduct actually and proximately caused Plaintiff's distress. *Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991). Outrageous conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (citation and internal quotation marks omitted). Medina and/or Harper would also have had to engage in that conduct "with the realization that injury [would] result." *Id.* (citation and internal quotation marks omitted).

Many of the abovementioned allegations could fall into the box of allegations involving employment decisions, which are barred under the California Workers' Compensation Act's exclusive remedies provision. *See Potter v. Ariz. S. Coach Lines, Inc.*, 202 Cal. App. 3d 126, 133 (1988) ("[W]here the employer's alleged misconduct consists of actions normally part of the employment relationship, i.e., demotions, promotions, [and] criticism of work practices . . . an employee suffering emotional distress causing disability *may not avoid* the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as intentionally outrageous, unfair, or harassing."); *Schaffer v. GTE, Inc.*, 40 Fed. Appx. 552, 557 (9th Cir. 2002) ("[U]nder California law, claims for . . . intentional infliction of emotional distress made within the context of [an] employment relationship are within the exclusive remedy provisions of the [CWCA]." (citation omitted)).

Other allegations in the Complaint are fairly conclusory as to IIED. *See* Complaint ¶¶ 58-63. The Complaint alleges that Harper and Medina's "discriminatory, harassing, and retaliatory actions against [P]laintiff constituted severe and outrageous misconduct and caused [P]laintiff extreme emotion distress. *See id.* ¶ 59. Plaintiff also alleges that Harper and Medina were aware they were treating Plaintiff in this manner, that Harper and Medina's extreme and outrageous conduct proximately caused Plaintiff's "severe emotional distress," and that this conduct was intentional. *See id.* ¶¶ 61-63.

Nonetheless, the Court reiterates and recognizes that "a defendant seeking removal based on an alleged fraudulent joinder must do more than show that the complaint at the time of

removal fails to state a claim against the non-diverse defendant." *Padilla v. AT & T Corp.*, 697 F.Supp.2d 1156, 1159 (C.D. Cal. 2009). Instead, "[t]he defendant must also show that there is *no possibility* that the plaintiff could prevail on any cause of action it brought against the non-diverse defendant." *Id.* (emphasis added) (internal quotation marks omitted). In other words, "[r]emand must be granted unless the defendant shows that the plaintiff would not be afforded leave to amend his complaint to cure the purported deficiency." *Nasrawi v. Buck Consultants, LLC*, 776 F.Supp.2d 1166, 1170 (E.D. Cal. 2011) (alterations and internal quotation marks omitted); *see also Rader v. Sun Life Assurance Co. of Can.*, 941 F.Supp.2d 1191, 1194 (N.D. Cal. 2013) ("The defendant must demonstrate that plaintiff has no possibility of establishing a cause of action in state court against the sham defendant."). The possibility to amend a pleading to state a cause of action against an allegedly sham defendant warrants remand. *Padilla*, 697 F. Supp. 2d at 1159.

Here, Defendants have not satisfied their burden to establish that Plaintiff could not *amend* his Complaint and allege further facts that *would* state an IIED claim against Harper and/or Medina. Thus, the Court would find that Harper and Medina are not fraudulently joined or sham defendants. Other courts have made similar determinations in similar contexts. *See Rangel v. Bridgestone Retail Operations, LLC*, 200 F. Supp. 3d 1024, 1032-34 (C.D. Cal. 2016) (noting that the factual allegations as to the plaintiff's IIED cause of action were either conclusory or fell under the CWCA exclusive remedies provision, but still remanding because the "[d]efendants have not met their burden of establishing that Plaintiff is incapable of amending his complaint to state a valid IIED claim."); *see also Martinez v. Michaels*, No. CV 15–02104 MMM-(Ex), 2015 WL 4337059, at *10 (C.D. Cal. July 15, 2015) (less similar than *Rangel* to the current case, but applicably holding that "even where the allegations underlying an IIED claim appear to be relatively weak, courts generally do not find fraudulent joinder, given that the sufficiency of the plaintiffs factual allegations is of limited import in deciding a motion to remand attacking a removal based on fraudulent joinder.") (alteration and internal quotation marks omitted); *Burris v. AT&T Wireless, Inc.*, No. C 06–02904 JSW, 2006 WL 2038040, at *2 (N.D. Cal. July 19, 2006) (remanding in a similar factual context because even though plaintiff failed to plead extreme or outrageous conduct to establish an IIED claim against his former supervisor, the defendants did not demonstrate a court would not grant leave to amend the complaint to cure its deficiencies). Falling in line with these cases, the Court would find remand

appropriate because leave to amend would surely be granted for IIED claim and the spelling of Harper's true name. It is not the case that there is *no possibility* that Plaintiff could state a claim against Medina and/or Harper.

In sum, the Court would find that both Harper and Medina are not sham defendants nor are they fraudulently joined at least as to the IIED claim.[5] Their California citizenship matches Plaintiff's California citizenship, and thus the Court lacks diversity jurisdiction. Even if that were the case for just Harper *or* Medina, the Court would be compelled to make the same determination. Therefore, the fact that a viable claim seems more likely against Harper rather than Medina, it is not dispositive in this analysis.

### III. Motion to Dismiss

Because the Court lacks subject matter jurisdiction over this matter, the Court would refrain from considering the MTD.

### IV. Conclusion

For the foregoing reasons, the Court would **GRANT** the MTR and **REMAND** the case to state court.[6] The Court would **DECLINE TO CONSIDER** the MTD because it lacks jurisdiction to do so.

---

[5] The Court need not conduct this analysis for the disability-based harassment claim because the Court's determination as to IIED is sufficient to merit remand. But, the Court recognizes that for Plaintiff to state a claim under FEHA a plaintiff must allege facts showing that workplace harassment was "severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees." *Hale v. Bank of Am.*, No. CV 12-10064 MMM-(PJWx), 2013 WL 989968, at *4 (C.D. Cal. Mar. 13, 2013) (citing *Hughes v. Pair,* 46 Cal.4th 1035, 1043 (2009)). Conduct constitutes harassment when it occurs "outside the scope of necessary job performance . . . presumably engaged for personal gratification, because of meanness, bigotry, or for other personal motives." *Reno v. Baird*, 18 Cal.4th 640, 646 (1998). "[E]mployment-related decisions" or "personnel decisions of a plainly delegable character" do not give rise to a harassment action. *Id.* Medina and Harper are also likely not fraudulently joined or sham defendants for the separate reason that it is within the realm of possibility that amendments could create a viable harassment claim, though at this point those allegations are conclusory and/or fall within the "employment-related decisions" bucket.

[6] Plaintiff requests attorney's fees associated with removal. *See* Motion at 13-14. The Supreme Court has held that "[a]bsent unusual circumstances, courts may award attorney's fees under [28] § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The Court does not find the situation here to be so clear-cut that an award of fees is warranted.